JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 25-10096 PA (PVCx) | Date | December 19, 2025 |
|---|---|---|---|
| Title | Guadalupe Cosme, et al. v. General Atomics, et al. | | |

| Present: The Honorable | PERCY ANDERSON, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Kamilla Sali-Suleyman | Not Reported | N/A |
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:**  IN CHAMBERS - COURT ORDER

Before the Court is a Motion to Remand filed by plaintiffs Guadalupe and Mario Cosme (jointly "Plaintiffs").  (Docket No. 33 ("Motion").)[1] Plaintiffs initiated this action against defendants General Atomics ("GA") and General Atomics Aeronautical Systems, Inc. ("GAAS") (jointly "Defendants") in the Los Angeles County Superior Court.  Defendants removed the case to federal court, alleging that this Court possesses jurisdiction over this action pursuant to 28 U.S.C. § 1442(a)(1).  Plaintiffs move to remand for lack of subject matter jurisdiction.  The Motion is fully briefed.  (Docket Nos. 42, 51.)  Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds that this matter is appropriate for decision without oral argument.  The hearing calendared for December 22, 2025, has been vacated, and the matter taken off calendar.

## I. BACKGROUND

This is a wrongful death action brought by Plaintiffs on behalf of themselves and as representatives of the estate of their daughter, Stephanie Rachel Cosme ("Decedent").  Defendant GAAS is a manufacturer of unmanned aerial systems and a wholly owned subsidiary of Defendant GA.  (Compl. ¶ 15.)

According to the Complaint, Decedent was employed as a test engineer by Sumaria Systems, LLC ("Sumaria") and traveled to Gray Butte Airfield in Palmdale, California (the "Airfield"), on September 6–7, 2023, to conduct testing on an MQ-9A Predator Drone (the "Aircraft") pursuant to a Department of Defense contract.  (Id. ¶¶ 1, 30.)  GAAS manufactured the Aircraft, and GA owns and operates the Airfield, providing safety and supervisory support.

---

[1]  Plaintiffs filed an amended Notice of Motion, changing the hearing date from December 15 to December 22, 2025.  (Docket No. 35.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 25-10096 PA (PVCx) | Date | December 19, 2025 |
|---|---|---|---|
| Title | Guadalupe Cosme, et al. v. General Atomics, et al. | | |

(See id. ¶¶ 1, 15.) The planned test (the "Test") involved evaluating the electromagnetic compatibility between the Aircraft's software system and newly released software from Air Force Special Operations Command. (Id. ¶ 26.)

As part of the Test, Decedent and her team were to take telemetry readings from the loaded weapons stations located inboard and under each wing while the Aircraft's engine was running and its rear propeller was spinning. (Id. ¶ 28.) The Aircraft is remotely operated by an aircrew located at a Ground Control Station. (Id. ¶ 1.) Mandatory Air Force Guidance for the Aircraft designates a "Propeller No Enter Zone" extending 6 feet from the rear tip of each tail to the propeller cone and instructs personnel to avoid this area when the propeller is spinning. (Id. ¶ 3.) A separate maintenance technical order for the Aircraft identifies a larger "Propeller No Enter Zone" extending 50 feet aft of the wingtips and warns that entering this zone while the propeller is spinning "may result in death or injury to personnel." (Id. ¶ 4.)

The "approved Test Project Safety Review and risk analysis" required telemetry readings to be taken using a spectrum analyzer, with both the device and technician outside the designated "Propeller No Enter Zone." (See id. ¶¶ 29, 42.) However, on September 6, 2023, Sumaria determined that the spectrum analyzer was unavailable and elected to substitute a handheld Agilent V3500 RF Power Meter (the "Handheld Power Meter"). (See id. ¶¶ 30–31.) Use of the Handheld Power Meter required the operator to stand within 2–3 feet of the Aircraft. (See id. ¶ 32.) Plaintiffs allege that because using the Handheld Power Meter required the technician to be in significantly closer proximity to the Aircraft, Defendants "should have requested an amendment to the Test Project Safety Review, which would have triggered a new risk assessment," but failed to do so. (See id. ¶¶ 33–34.)

That evening, Sumaria conducted a demonstration of the procedure Decedent would follow: she would walk along the edge of the right wing, hold the Handheld Power Meter inches from the wing surface, then proceed around the rear of the Aircraft – where the propeller was located, though not running during the demonstration – to the left wing and repeat the process. (See ¶ 37.) Employees of Defendants, including the Crew Chief, observed the demonstration but did not intervene or review safety protocols with Decedent regarding approaching the Aircraft. (See id. ¶¶ 36–39.)[2/] Further, Plaintiffs allege that the Crew Chief failed to attend a maintenance briefing relevant to the Test on September 7, failed to review the written briefing, and "did

---

[2/]    Plaintiffs also allege that Defendants failed to correct Sumaria when it told Decedent, incorrectly, that the Handheld Power Meter must be held within 6–12 inches of the Aircraft (rather than 2–3 feet) in order to obtain an accurate reading. (See id. ¶ 38.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 25-10096 PA (PVCx) | Date | December 19, 2025 |
|---|---|---|---|
| Title | Guadalupe Cosme, et al. v. General Atomics, et al. | | |

nothing to ensure that [Decedent] was properly prepared and trained for the planned testing." (Id. ¶ 40.)

Decedent conducted the telemetry readings on the evening of September 7, 2023. In the hours before the Test, she was instructed to stand by the Aircraft alone, was not provided any communication equipment, and was unable to communicate with the Ground Control Station except via text message. (See id. ¶¶ 41–44.) Plaintiffs allege that Defendants failed to ensure that the ground crew and aircrew had established any emergency procedures, including a clear phrase to immediately terminate the Test. (See id. ¶ 47.) After receiving a text message from Sumaria directing her to begin, Decedent replicated the demonstration procedure and walked along the Aircraft. (See id. ¶¶ 50, 53.) Unlike during the demonstration, however, the Aircraft's engine was running, and its propeller blades were spinning. (See id. ¶ 52.) As Decedent carried out the Test, Defendants' ground test crew realized that she was in dangerous proximity to the propeller and attempted warn her by shouting and waving, but she could not hear them and, due to lighting conditions, could not see the spinning propeller. (See id. ¶¶ 51, 54–56.) In addition, the Crew Chief was not positioned near the kill switch that could have shut down the engine. (Id. ¶ 57.) Decedent was struck by the propeller and sustained fatal injuries. (Id. ¶ 60.)

Based on these allegations, the Complaint alleges a wrongful death claim pursuant to California Code of Civil Procedure § 377.60. Defendants removed the case to this Court on October 21, 2025, invoking 28 U.S.C. § 1442(a)(1) and asserting federal officer jurisdiction. Plaintiffs now seek remand, arguing that Defendants have not met the statutory prerequisites for removal under § 1442(a)(1).

## II.     LEGAL STANDARD

Federal courts are courts of limited jurisdiction, having subject matter jurisdiction only over matters authorized by the Constitution and Congress. See, e.g., Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994). A suit filed in state court may be removed to federal court if the federal court would have had original jurisdiction over the suit. 28 U.S.C. § 1441(a). A removed action must be remanded to state court if the federal court lacks subject matter jurisdiction. 28 U.S.C. § 1447(c). "The burden of establishing federal jurisdiction is on the party seeking removal, and the removal statute is strictly construed against removal jurisdiction." Prize Frize, Inc. v. Matrix (U.S.) Inc., 167 F.3d 1261, 1265 (9th Cir. 1999). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992).

JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 25-10096 PA (PVCx) | Date | December 19, 2025 |
|---|---|---|---|
| Title | Guadalupe Cosme, et al. v. General Atomics, et al. | | |

## III. DISCUSSION

The federal officer removal statute, 28 U.S.C. § 1442(a)(1), provides:

> A civil action or criminal prosecution commenced in a State court against any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending: (1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office . . . .

Suits against federal officers are an exception to the general rule that a case is removable only if the federal question appears on the face of a properly pleaded complaint. See Jefferson County v. Acker, 527 U.S. 423, 431, 119 S. Ct. 2069, 2075 (1999). "Under the federal officer removal statute, suits against federal officers may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law." Id. Unlike with other removal statutes, which courts must interpret strictly, "courts afford § 1442 a 'generous' and 'liberal' construction, interpreting the statute 'broadly in favor of removal.'" DeFiore v. SOC LLC, 85 F.4th 546, 553 (9th Cir. 2023) (quoting Durham v. Lockheed Martin Corp., 445 F.3d 1247, 1252–53 (9th Cir. 2006)); see Arizona v. Manypenny, 451 U.S. 232, 242, 101 S. Ct. 1657, 1664 (1981) (quoting Willingham v. Morgan, 395 U.S. 402, 407, 89 S. Ct. 1813, 1816 (1969)) ("[T]his Court has held that the right of removal is absolute for conduct performed under color of federal office, and has insisted that the policy favoring removal 'should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1).'").

"A party seeking removal under section 1442 must demonstrate that (a) it is a 'person' within the meaning of the statute; (b) there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims; and (c) it can assert a 'colorable federal defense.'" Durham, 445 F.3d at 1251 (quoting Jefferson County, 527 U.S. at 431 and citing Mesa v. California, 489 U.S. 121, 124–25, 131–35, 109 S. Ct. 959, 962, 965–67 (1989)); see Fidelitad, Inc. v. Insitu, Inc., 904 F.3d 1095, 1099 (9th Cir. 2018). The party seeking removal must prove "by a preponderance of the evidence" that the requirements for removal have been met. Leite v. Crane Co., 749 F.3d 1117, 1122 (9th Cir. 2014); see Lake v. Ohana Mil. Communities, LLC, 14 F.4th 993, 1000 (9th Cir. 2021) (citing Liete, 749 F.3d at 1122) (explaining that although federal officer removal statute is read broadly in favor of removal, the party seeking removal still bears the burden of proving that the requirements for removal are "factually supported").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 25-10096 PA (PVCx) | Date | December 19, 2025 |
|---|---|---|---|
| Title | Guadalupe Cosme, et al. v. General Atomics, et al. | | |

Plaintiffs contend that Defendants have not met their burden as to the causal nexus element or the colorable federal defense element and thus cannot show that removal was proper.

### A.    Causal Nexus

When a private person or entity attempts to remove an action based on section 1442(a)(1), the "relevant relationship is that of a private person 'acting under' a federal 'officer' or 'agency.'" Watson v. Philip Morris Cos., 551 U.S. 142, 151, 127 S. Ct. 2301, 2307 (2007). "For a private entity to be 'acting under' a federal officer, the private entity must be involved in 'an effort to assist, or to help carry out, the duties or tasks of the federal superior.'" Goncalves By & Through Goncalves v. Rady Children's Hosp. San Diego, 865 F.3d 1237, 1245 (9th Cir. 2017) (quoting Watson, 551 U.S. at 152). "The 'relationship typically involves "subjection, guidance, or control,"' but it must go beyond simply complying with the law, even if the laws are "highly detailed" and thus leave the entity 'highly regulated.'" Id. (quoting Watson, 551 U.S. at 151–53). In determining whether an independent contractor hired by the government – like Defendants – "acts under" a federal officer for purposes of section 1442(a)(1), courts in the Ninth Circuit consider whether the independent contractor is an agent under common-law agency principles. See DeFiore, 85 F.4th at 556.

To establish a causal nexus between a contractor's actions taken pursuant to a federal officer's directions and a plaintiff's claims, the contractor must show that "the challenged acts 'occurred because of what they were asked to do by the Government.'" Id. at 557 (quoting Goncalves, 865 F.3d at 1245). "In assessing whether a causal nexus exists, we credit the defendant's theory of the case." Id. (citing Leite v. Crane Co., 749 F.3d 1117, 1124 (9th Cir. 2014)).

Here, Defendants assert in the Notice of Removal that they satisfy the causal nexus requirement because Plaintiffs' claims arise directly from alleged acts or omissions by Defendants that were carried out under the direction of the Air Force. (Docket No. 1 ("NOR") ¶¶ 17–20.) Specifically, Defendants allege that "[a]ny and all testing, safety, and training allegedly performed by Defendants at the Airfield was subject to the extensive Air Force control, directives, and publications" and that the Test Decedent performed on the Aircraft was "undertaken pursuant to testing and safety procedures set forth by the Air Force." (Id. ¶¶ 17–18.) Defendants add in their Opposition that the Test was an "[Air Force]-directed program" and was "conducted pursuant to an [Air Force] test plan and under [Air Force]-approved procedures." (Opp'n at p. 5 (citing Docket No. 42-1, Declaration of Charles McVicker ("McVicker Decl.") ¶ 3).)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 25-10096 PA (PVCx) | Date | December 19, 2025 |
|---|---|---|---|
| Title | Guadalupe Cosme, et al. v. General Atomics, et al. | | |

Plaintiffs do not contest that Defendants were generally subject to Air Force oversight and control. Instead, they contend that Defendants cannot meet the causal nexus requirement because the conduct alleged in the Complaint was not undertaken pursuant to Air Force direction and, to the contrary, reflects Defendants' purported failure to implement and enforce the Air Force's Mandatory Guidance and technical orders. (See Motion at p. 9; Reply at p. 4.) The Court agrees. While Defendants allege that the testing process is dictated by the Air Force and set forth in various mandatory guidance and technical orders, Defendants fail to offer any facts or evidence to suggest that the challenged actions alleged in the Complaint, i.e., allowing Decedent to enter the "Propeller No Entry Zone" during the Test in contravention of applicable Air Force safety guidance and technical orders, was done under the direction of the Air Force. As Defendants acknowledge, no one from the Air Force was at the Airfield during the test. (See McVicker Decl. ¶ 10.) Further, Defendants fail to point to any guidance or orders from the Air Force specifying that the Test could be conducted in the manner described in the Complaint.

Because Plaintiffs allege that Defendants affirmatively failed to comply with Air Force directions and orders – and because Defendants identify no plausible basis to conclude that the alleged incident occurred as a result of any Air Force directive – they have not shown, by a preponderance of the evidence, that a causal nexus exists between their conduct and Plaintiffs' claims. See Cabalce v. Thomas E. Blanchard & Assocs., Inc., 797 F.3d 720, 728–30 (9th Cir. 2015) (concluding that government contractor hired to store and dispose of seized fireworks failed to satisfy causal nexus requirement where contractor failed to provide any evidence of particular federal control or supervision over the handling of the seized fireworks at issue in that case); N.G. v. Downey Reg'l Med. Ctr., 140 F. Supp. 3d 1036, 1041 (C.D. Cal. 2015) (explaining that defendant's blanket assertion of compliance with protocols determined by federally-designated organizations did not establish causal nexus because defendant failed to show that protocols specifically required defendant's alleged negligent actions). Thus, Defendants fail to satisfy their burden as to the causal nexus requirement.

**B.      Colorable Federal Defense**

To support removal under section 1442(a)(1), the removing party must demonstrate that it can assert a colorable federal defense. "The purpose of this requirement is to supply a federal element under which the defense to the action arises. Thus, 'the federal-question element is met if the defense depends on federal law.'" DeFiore, 85 F.4th 546, 558 (9th Cir. 2023) (citing Mesa, 489 U.S. at 136 and quoting Jefferson County, 527 U.S. at 431)). "[T]he scope of the court's inquiry is only whether the defendant advanced a colorable federal defense, 'not whether [the] defense will be successful.'" DeFiore, 85 F.4th at 546 (quoting Magnin v. Teledyne Cont'l

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 25-10096 PA (PVCx) | Date | December 19, 2025 |
|---|---|---|---|
| Title | Guadalupe Cosme, et al. v. General Atomics, et al. | | |

Motors, 91 F.3d 1424, 1429 (11th Cir. 1996)); see Jefferson County, 527 U.S. at 431 (quoting Willingham, 395 U.S. 402 at 407) (explaining that a defendant is not required to "virtually . . . 'win his case before he can have it removed.'"). To determine whether a defense is colorable, courts use the same standard as is used to determine whether a claim is colorable. See DeFiore, 84 F.4th at 559–60.

     Here, Defendants allege in the Notice of Removal that they can assert a colorable government contractor defense, as set forth in Boyle v. United Technologies, Inc., 487 U.S. 500 (1988), and as applied to government contracts involving military aircraft in Getz v. Boeing Co., 654 F.3d 852 (9th Cir. 2011). (NOR ¶ 21.) The government contractor defense "protects government contractors from tort liability that arises as a result of the contractor's 'compli[ance] with the specifications of a federal government contract.'" Getz, 654 F.3d at 860 (quoting In re Hanford Nuclear Reservation Litig., 534 F.3d 986, 1000 (9th Cir. 2008)). In Boyle, the Supreme Court identified the three elements a contractor must establish in order to invoke this defense: "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." 487 U.S. at 512. "Although Boyle involved a design defect, the test may apply equally to government contracts performed according to government specifications, because the 'defense is intended to implement and protect the discretionary function exception under the Federal Tort Claims Act, 28 U.S.C. § 2680(a).'" Arness v. Boeing N. Am., Inc., 997 F. Supp. 1268, 1272 (C.D. Cal. 1998) (quoting Snell v. Bell Helicopter Textron, Inc., 107 F.3d 744, 746, 749 & n. 3 (9th Cir. 1997)); see Butterfield v. Gen. Elec. Co., No. 23-CV-01620-AMO, 2023 WL 8697701, at *3 (N.D. Cal. Dec. 15, 2023) (collecting cases).

     Plaintiffs argue that Defendants fail to establish a colorable government contractor defense because Plaintiffs' claims stem from Defendants' failure to implement Air Force guidelines and technical orders rather than any deficiency in the guidelines or technical orders themselves. (Motion at pp. 10–11.) The Court agrees. While Defendants assert that all testing on the Airfield is conducted pursuant to Air Force directions and guidance, they offer no facts or evidence to suggest that the Test, as performed by Decedent in the manner described in the Complaint, was carried out in accordance with reasonably precise government specifications. As a result, Defendants fail to show by a preponderance of the evidence that their government contractor defense is colorable. See Cabalce, 797 F.3d at 731–32 (finding defendant failed to establish colorable government contractor defense where defendant failed to proffer any evidence that the government approved a particular specification for alleged fireworks' destruction); cf. Livingston v. 3M Co., No. 2:12-CV-01220-SVW-DTB, 2013 WL 12086634, at

JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 25-10096 PA (PVCx) | Date | December 19, 2025 |
|---|---|---|---|
| Title | Guadalupe Cosme, et al. v. General Atomics, et al. | | |

*5 (C.D. Cal. Apr. 25, 2013) (denying defendant summary judgment on government contractor defense to failure to warn claim where defendant failed to show that Air Force approved specifications that limited contractor's ability to warn of asbestos as required under state law). Accordingly, Defendants fail to satisfy their burden as to the colorable federal defense requirement.

## Conclusion

      For all of the foregoing reasons, the Court concludes that Defendants have not shown that removal was proper under 28 U.S.C. § 1442(a)(1) and therefore have not carried their burden to establish this Court's subject matter jurisdiction over the action.  Accordingly, the Court remands this action for lack of subject matter jurisdiction to the Los Angeles Superior Court, Case No. 25AVCV01134.  See 28 U.S.C. § 1447(c).

      IT IS SO ORDERED.